UNITED STATES DISTRICT COURT

DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>PAUL GOTTA | Crim. No. 3:14cr15(RNC)<br><br><br><br>March 21, 2017 |

**GOVERNMENT'S SUPPLEMENTAL SENTENCING MEMORANDUM**

The government respectfully submits this supplemental sentencing memorandum in connection with the defendant Paul Gotta's ("Gotta") sentencing hearing on March 24, 2017. For the reasons set forth below, the government asks that the Court adopt the findings of fact in the Pre-Sentence Report ("PSR") and conclude that the guideline range for the offense is 6-12 months' incarceration. The government respectfully suggests that the Court impose an incarceration term above the guideline range to reflect the serious nature of the offense conduct.

## I. BACKGROUND[1]

On July 19, 2013, law enforcement officers with the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF") arrested the defendant, Paul Gotta, based on a complaint and an arrest warrant issued by United States Magistrate Judge Holly B. Fitzsimmons. The complaint alleged that Gotta aided and abetted both the unlawful interstate transport of a handgun, in violation of 18 U.S.C. §§ 2 and 922(a)(3), and the unlawful purchase of a handgun by a juvenile, in violation of 18 U.S.C. §§ 2 and 922(x)(2). Gotta was presented in court on July 19, 2013 and ordered detained

[1] The government's December 9, 2016 sentencing memorandum set out, in detail, the procedural history and factual background of the case.

based on the government's motion for pretrial detention. On July 25, 2013, Gotta filed a motion for release from custody based on a proposed bond package and, on that same date, the Court ordered that he be released after executing a $500,000 surety bond and based on a number of pretrial release conditions, including the condition that he reside with his sister in Bridgeport and remain on house arrest with electronic monitoring. Those conditions have lessened over time, and Gotta has always been in compliance.

On January 30, 2014, a federal grand jury sitting in Hartford returned a six-count Indictment charging Gotta with aiding and abetting the unlawful transport of a firearm in interstate commerce, in violation of 18 U.S.C. §§ 2, 922(a)(3) and 924(a)(1)(D) (Count One), aiding and abetting the unlawful purchase of a firearm by a juvenile, in violation of 18 U.S.C. §§ 2 and 922(x)(2) (Count Two), aiding and abetting the unlawful purchase of ammunition by a juvenile, in violation of 18 U.S.C. §§ 2 and 922(x)(2) (Count Three), distribution of explosive material to an individual under 21 years of age, in violation of 18 U.S.C. §§ 2 and 842(d)(1) (Count Four), aiding and abetting the attempted manufacture of a destructive device, in violation of 18 U.S.C. § 2 and 26 U.S.C. §§ 5845(a)(8) and 5861(f) (Count Five) and obstruction of justice, in violation of 18 U.S.C. § 1505 (Count Six).

On March 8, 2016, Gotta pleaded guilty to Count Four of the Indictment charging him with knowingly and willfully distributing explosive material to an individual under 21 years of age, in violation of 18 U.S.C. §§ 2 and 842(d)(1). The offense carries a maximum term of ten years in prison, a maximum term of three years of supervised release, and a $250,000 fine. In the plea agreement, the parties stipulated that the base offense level was 12 under U.S.S.G. § 2K1.3(a)(5). After a two-level reduction for acceptance of responsibility, the total offense level was 10. On the

acceptance reduction, the government agreed that it would not withhold the recommendation if Gotta "refuses to admit to relevant conduct underlying any counts in the Indictment other than Count Four." The parties stipulated that Gotta had no prior record and fell into Criminal History Category I, so that his guideline range was 6-12 months in prison. Both Gotta and the government reserved their respective rights to seek upward or downward variances or departures and to seek a sentence above or below the 6-12-month range.

Gotta waived his right to appeal or collaterally attack his sentence provided that it did not exceed 12 months' incarceration, a three-year term of supervised release and a $20,000 fine. The government agreed to move to dismiss Counts One, Two, Three, Five and Six of the Indictment after sentencing because, "though the defendant may deny some of the conduct underlying these counts, the parties agree that all of the conduct that forms the basis of these counts will be considered as relevant conduct in this case."

The first sentencing hearing went forward on December 15, 2016. The parties contemplated an evidentiary hearing to address a variety of factual disputes. The government planned to call K.B. and his father as witnesses. In particular, the government had filed a sentencing memorandum seeking an upward variance to an incarceration term of 51 months based on facts it would seek to establish both as to Gotta's conduct underlying the charges in the Indictment and as to his alleged sexual abuse of the victim, K.B. Gotta filed a sentencing memorandum denying many of the factual allegations and asking for a sentence of probation.

At the start of the hearing, the Court engaged the government in a discussion about the purpose of the evidentiary hearing and the theory underlying its request for a variance. The Court ruled that the government could not rely on the proposed testimony unless it was offering the

testimony to support a request for an upward departure under U.S.S.G. § 5K2.9 ("If the defendant committed the offense in order to facilitate or conceal the commission of another offense, the court may increase the sentence above the guideline range to reflect the actual seriousness of the defendant's conduct."). The government indicated that it was asking for an upward variance under 18 U.S.C. § 3553(a), not an upward departure under § 5K2.9. In light of the Court's ruling that it would not consider the testimony unless it was offered in support of a request for an upward departure under § 5K2.9, the government, with consent from defense counsel, elected not to call any witnesses and asked for a continuance of the sentencing hearing.

Over the next several weeks, the parties met and discussed a possible way forward. Ultimately, the parties reached an agreement under which the government would withdraw its request for an evidentiary hearing, would not seek to prove the sexual abuse allegations set out in its original sentencing memorandum, and would present K.B.'s victim impact statement instead of his testimony. For his part, Gotta decided to agree to the factual allegations underlying all six charges in the Indictment, so that he was no longer challenging any of his offense conduct. In particular, Gotta does not challenge the newly revised offense conduct set out in paragraphs 6 through 18 of the Pre-Sentence Report ("PSR"). He admits that (1) in July 2012, he aided and abetted the interstate transport, and juvenile purchase, of a Taurus model 605, .357 magnum handgun (Counts One and Two); (2) in November 2012, he aided and abetted the possession of thousands of rounds of .357 ammunition by a juvenile (Count Three); (3) in December 2012, he purchased two pounds of smokeless powder for someone under 21 years of age (Count Four); (4) from December 2012 through May 2013, he aided and abetted the attempted manufacture of a pipe bomb (Count Five); and (5) from May 29, 2013 through June 5, 2013, he obstructed justice by

providing materially false information to ATF regarding alleged criminal offenses being committed by K.B. (Count Six). The parties advised the Court of their proposed agreement, the Court accepted it, and the Probation Office amended the PSR to reflect the newly agreed upon facts. Sentencing is now scheduled for March 24, 2017.

The following facts are undisputed. On May 29, 2013, Gotta called ATF directly to report his concerns about K.B., one of his parishioners. He agreed to meet with ATF agents and provided a detailed statement regarding K.B. According to Gotta, K.B., who turned eighteen years old in March 2013, had been an altar boy at St. Phillip's church and, more recently, had been employed by Gotta to do odd jobs around the church, had made veiled threats directed both at Gotta himself, and at K.B.'s high school. Gotta gave detailed information about K.B.'s alleged manufacture of destructive devices and possession of ammunition and firearms. He described K.B. as a troubled youth, with little family support. According to Gotta, K.B.'s mother had died of a drug overdose when he was six years old, and his grandfather, who had been an influential figure in his life, had died in 2012. K.B. was being raised by his father John, a disabled Vietnam veteran who is a recovering alcoholic and has had little control or influence in K.B.'s life. Gotta said that he had tried to help K.B. by employing him at the church and allowing him to spend time there. But Gotta expressed general concern, claiming that K.B. was acting erratically. He referenced, as an example of this behavior, an incident that occurred the day before, in which Gotta found three rounds of ammunition at his front door and suspected that K.B. was behind it.

Based on Gotta's information, ATF, working with the East Windsor Police, obtained a state search warrant for K.B.'s residence and, upon execution, seized a variety of illegal contraband, including a homemade shotgun, components for a pipe bomb, two pounds of smokeless powder,

thousands of rounds of rifle and handgun ammunition and several homemade silencers. K.B. was arrested on felony charges and detained for several months. Eventually, he was released on house arrest and has since pleaded guilty in state court to two felony counts of possession of a silencer. He faced a sentence of ten years' incarceration, execution suspended after three years, but had the right to argue for a lower sentence. He was sentenced to a term of probation.

Upon his arrest, K.B. provided information which directly contradicted what Gotta had said. First, he denied ever making threatening remarks or overtures to anyone. Second, though he admitted to having possessed all of the items seized from his home and having attempted to make smoke bombs, pipe bombs, silencers and a shotgun, he claimed that Gotta was directly involved in those projects and, in fact, had been the one to encourage these endeavors. Third, he claimed that Gotta had funded the purchase of several items of contraband, including some of the ammunition, the smokeless powder, the pipe bomb parts, and, in one instance, a firearm that K.B. had purchased at a gun show in Arizona in July 2012. K.B. claimed that this firearm, along with thousands of rounds of ammunition, were hidden in a bin beneath the basement stairs of the St. Phillip's rectory. He described Gotta as having an obsession with firearms and destructive devices and having a "doomsday" mentality which caused him to want to stockpile firearms and ammunition.

Based on inconsistencies in Gotta's actions and statements and K.B.'s information, some of which was corroborated by his father, ATF and the East Windsor police turned their attention back to Gotta. They visited him at his residence, received consent to search it, and looked for the bin containing the firearm and ammunition. Gotta denied ever receiving a firearm from K.B., and the agents discovered nothing beneath the basement stairs of the rectory, though they did

observe several scrape marks on the floor, indicating something had been dragged across the floor. Gotta did not say that he had ever decided to take a firearm from K.B. for safekeeping.

A few days after leaving, ATF received a call from Gotta's attorney. She advised that he wanted to provide them with something and asked them to return to the rectory. The agents did so and were provided a bin identical to the one that K.B. had described. It weighed several hundred pounds and required multiple agents to move it. Gotta made no statements about the contents of the bin and did not help ATF open it (it was locked). He simply turned it over to them. When ATF broke the lock and opened the bin, they found containers with thousands of rounds of handgun ammunition, a survival guide, and the .357 handgun charged in Count One of the Indictment. They also observed in the basement large quantities of rice, flour, water and first-aid supplies. They would later discover a Walmart receipt in Gotta's desk showing the purchase of an identical bin to the one Gotta had turned over to them.

In early June 2013, after seizing the firearm, ATF and the East Windsor police executed several different state search warrants at the rectories at both St. Phillip's and St. Catherine's churches. A search of Gotta's personal laptop revealed that the hard drive had been removed. The church computer, according to Gotta, had been wiped clean due to his concern that K.B. had used it to purchase firearms and ammunition over the internet. The police also found, in Gotta's desk, a piece of paper in K.B.'s handwriting, listing all of the necessary components to make a pipe bomb. The paper also included notations in Gotta's handwriting about what kind of explosive powder to buy.

K.B. met with ATF and the East Windsor police on three separate occasions in June 2013, which included his post-arrest statement. During his second meeting, which the FBI attended, he

discussed his relationship with Gotta. He explained that they shared a close friendship and that K.B. spent many hours at the church.

Also, during this second meeting, ATF asked K.B. specific questions about the firearm seized from the rectory. K.B. repeated some of what he had already told them during the first interview. He had attended a gun show in Arizona in July 2012 during a family trip with his father, John. At that show, he had purchased Gotta's gun, along with approximately nine other handguns. He has used a fake ID to make these purchases. He alleged that, prior to leaving on the trip, Gotta had given him and his father a $100 gift card for gas and $350 in cash for the purchase of a handgun for Gotta. K.B. claimed that Gotta did not yet have a pistol permit and, for some reason, wanted a gun that could not be traced back to him. ATF asked where the remaining firearms were located, and K.B. took them to a field in Suffield where he had buried all of the firearms. He admitted to having lied in his post-arrest statement when he had claimed to have destroyed those guns and said that he hid them in the field so that the police would not find them.

K.B.'s father was also interviewed after K.B.'s arrest. He acknowledged taking K.B. to the Arizona gun show in July 2012, during a family trip which had included stops in Tennessee and Arkansas. He claimed that he had not gone inside the gun show and had been unaware that K.B. had purchased any firearms there. He said that, though he had witnessed Gotta give K.B. $350 in cash prior to the trip, he had not known the money was for a gun. He also said that, when he returned to Connecticut, he discovered for the first time that K.B. had purchased a handgun for Gotta and drove K.B. to the rectory so that K.B. could bring the gun to Gotta.

John later recanted part of this statement and admitted that he had known K.B. was going to Arizona to purchase firearms at a gun show, that he had witnessed Gotta provide K.B. with $350

in cash for the firearm and that he had known K.B. had purchased one firearm for Gotta. John said that he did not confront K.B. as to the fake identification or as to his decision to purchase handguns in Arizona because he was "losing" K.B. and was worried that any addition confrontation between them would drive K.B. from him – John noticed that, during this time, K.B. had become more distant and was spending more and more time with Gotta at the church. When they returned from Arizona, John remembers driving K.B. over to the church to give a firearm to Gotta. John did not go inside with him or observe him hand the firearm to Gotta, but knew that K.B. returned to the car without the gun.

In July 2013, the government obtained an arrest warrant for Gotta based on his aiding and abetting K.B.'s purchase of a handgun in Arizona. Gotta agreed to provide a post-arrest statement, but denied any criminal activity. He denied having paid K.B. to purchase a handgun in Arizona (though he acknowledged taking the gun from K.B. for safekeeping after the Arizona trip).

The government has secured records to corroborate some of K.B.'s statements. First, as to the Arizona trip, the government obtained a newspaper advertisement for the Arizona gun show, Enterprise rental car records for the car that K.B. and his father drove out to Arizona, phone records establishing that K.B. and Gotta talked when K.B. was at the gun show, bank records showing money withdrawals by K.B. to fund his purchase of the nine other handguns in Arizona, the ATF 4473 form for the charged handgun showing that its first sale occurred in Arizona, and handwritten receipts for several of the handguns purchased by K.B. at the gun show. As mentioned above, officers also seized from the church rectory a large bin containing the handgun purchased by K.B. for Gotta, a survival guide, and thousands of rounds of handgun ammunition purchased by K.B.

and Gotta.

In addition, the government obtained records from Riverview Gun Sales showing that Gotta went to the store on December 14, 2012 and December 20, 2012 and, on each occasion, purchased one pound of Alliant 2400 smokeless powder, which is an explosive material. He provided all of this powder to K.B., and one container of it was found when law enforcement officers searched K.B.'s residence in June 2013.

The government obtained records from the website, Ammunition to Go, showing purchases by K.B. in November 2012 of thousands of rounds of ammunition. At that time, K.B. was seventeen-years-old and was not lawfully able to purchase handgun ammunition. Much of the ammunition found in the canisters hidden at the rectory was purchased by K.B. on this website.

The Pre-Sentence Report ("PSR") agreed with the parties' stipulation in the plea agreement. It found that the base offense level, under § 2K1.3 of the November 1, 2015 version of the Sentencing Guidelines, was 12. *See* PSR ¶ 23. After subtracting two levels for acceptance of responsibility, the total offense level is 10. *See* PSR ¶¶ 28-31.

It also concluded that Gotta had only one prior conviction for second degree breach of peace, a misdemeanor, for which he received a sentence of 6 months in jail, execution suspended, and 2 years of conditional discharge. *See* PSR ¶ 33. According to the PSR, this conviction stemmed from the state sexual assault charges arising out of K.B.'s disclosure of abuse during this investigation. *See* PSR ¶ 33.

With only one criminal history point, Gotta falls into Criminal History Category I. *See* PSR ¶ 34. At a Criminal History Category I, and an adjusted offense level of 10, the resulting guideline range is 6-12 months' incarceration. *See* PSR ¶ 66. The PSR noted that an upward departure may

be warranted because Gotta distributed explosive material to someone under 21 years of age. *See* PSR ¶ 77.

The PSR also set out a victim-impact statement and described the impact this case had on K.B. According to K.B., when asked about how Gotta's actions have affected him, he said he "has lost the ability to trust people" and described himself as "being stuck in a constant feeling of your life sucks." PSR ¶ 21. He said he suffers from flashbacks, panic attacks, and anxiety. PSR ¶ 21. He has been frustrated and confused as "the community he lives in continues to show support for the defendant and place the blame on him." PSR ¶ 21. He said that the state system "has failed him and that if the Court does not incarcerate Gotta, it would be 'doing a disservice to the community.'" PSR ¶ 21.

At this juncture, there are no longer any factual disagreements as to the conduct underlying the charges in the Indictment. Gotta agrees that he is guilty of all of the charged offenses and does not take issue with the factual statements set out in the amended PSR. Though the government no longer seeks a sentence of 51 months' incarceration and no longer seeks to call witnesses to establish the sexual assault allegations set out in its original sentencing memorandum, it continues to believe a sentence in excess of 12 months in jail is minimally necessary to reflect the serious nature of the offense conduct and its impact on K.B.

## II. DISCUSSION

After the Supreme Court's holding in *United States v. Booker*, 543 U.S. 220, 243-245 (2005) rendered the Sentencing Guidelines advisory rather than mandatory, a sentencing judge is required to: "(1) calculate[] the relevant Guidelines range, including any applicable departure under the Guidelines system; (2) consider[] the Guidelines range, along with the other § 3553(a)

factors; and (3) impose[] a reasonable sentence." *See United States v. Fernandez*, 443 F.3d 19, 26 (2d Cir. 2006); *United States v. Crosby*, 397 F.3d 103, 113 (2d Cir. 2005). The § 3553(a) factors include: (1) "the nature and circumstances of the offense and history and characteristics of the defendant"; (2) the need for the sentence to serve various goals of the criminal justice system, including (a) "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment," (b) to accomplish specific and general deterrence, (c) to protect the public from the defendant, and (d) "to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner"; (3) the kinds of sentences available; (4) the sentencing range set forth in the guidelines; (5) policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentencing disparities; and (7) the need to provide restitution to victims. *See* 18 U.S.C. § 3553(a).

The Second Circuit reviews a sentence for reasonableness. *See Rita v. United States*, 127 S. Ct. 2456, 2459 (2007). The reasonableness standard is deferential and focuses "primarily on the sentencing court's compliance with its statutory obligation to consider the factors detailed in 18 U.S.C. § 3553(a)." *United States v. Canova*, 412 F.3d 331, 350 (2d Cir. 2005).

Gotta pleaded guilty in this case, and the facts underlying the charges in the Indictment are no longer in dispute. Gotta provided $350 in cash to K.B. and asked him to purchase a handgun for him in Arizona. At the time, K.B. was 17 years old. Gotta knew that K.B. had obtained a fake ID to allow him to purchase firearms in Arizona. He knew that it was illegal for K.B. to purchase handguns in Arizona, or anywhere else (due to his age). He also helped K.B. purchase thousands of rounds of handgun ammunition in November 2012. When agents and officers came to Gotta after K.B.'s arrest and asked about the handgun K.B. had purchased for him, Gotta lied and feigned

ignorance. A week later, his attorney called those same investigators back to the rectory and turned over a large bin containing most of the ammunition K.B. had purchased back in November 2012, as well as the Arizona handgun.

Gotta also helped K.B. build a pipe bomb. He unlawfully purchased explosive powder on two occasions in December 2012 for K.B., and he purchased other component parts for a pipe bomb over the next several months. This offense conduct actually carries a higher guideline range because any crime involving a destructive device offense starts at a base offense level of 18.

Finally, Gotta lied to ATF and the police, though he did not receive a two-level obstruction of justice enhancement under § 3C1.1. He left quite a bit out of the information he provided to law enforcement officers. He did not acknowledge having asked K.B. to purchase unlawfully a handgun for him and having provided him money to do it. He did not acknowledge having purchased thousands of rounds of handgun ammunition for K.B. And he did not acknowledge having purchased component pipe bomb parts for K.B., including the explosive powder and end caps.

This offense conduct was very serious. Not only did Gotta have an inappropriate relationship with a 17-year-old parishioner, he helped that parishioner violate federal law by encouraging him to purchase a handgun in Arizona, by helping him purchase handgun ammunition and pipe bomb components, and by lying to law enforcement officers about his criminal conduct leading, at least in the short term, to K.B.'s arrest and incarceration, while Gotta remained free. His conduct has had a dramatic impact on K.B., who lost the support of his community and no longer is able to trust those close to him. K.B. is trying to move on with his life, but the scars left from Gotta's offenses are deep.

## III. CONCLUSION

For the reasons stated above, the government respectfully asks the Court to adopt the factual findings in the PSR, find that the guideline incarceration range in this case is 6-12 months, and impose an upward variance to an incarceration term in excess of 12 months in prison.

Respectfully submitted,

DEIRDRE M. DALY
UNITED STATES ATTORNEY

/s/ *Robert M. Spector*
ROBERT M. SPECTOR
ASSISTANT UNITED STATES ATTORNEY
FEDERAL BAR NO. CT18082
157 CHURCH STREET; 23rd FLOOR
NEW HAVEN, CT 06510
203-821-3700

CERTIFICATION

I hereby certify that on March 21, 2017, the foregoing Sentencing Memorandum was filed electronically. Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing. Parties may access this filing through the Court's system.

/s/ *Robert M. Spector*
ROBERT M. SPECTOR
ASSISTANT UNITED STATES ATTORNEY